The National City Bank of New York, Plaintiff and Appellee, *v.* Mercedes de la Torre and Arturo O'Neill, Defendants, and Francisco de la Torre, Defendant and Appellant.

No. 7608. Argued November 10, 1938.—Decided February 8, 1939.

*Francisco de la Torre pro se. Luis Llorents Torres* for appellant.
*Fiddler, Córdova & McConnell* for appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

Mercedes de la Torre Berríos applied to the American Colonial Bank of Puerto Rico for a loan of $10,398.38. The Bank demanded certain collateral securities in addition to the mortgage offered by the applicant. As a substitute for the collateral securities, Francisco de la Torre Garrido, petitioner, agreed to bind himself to pay the amount of the loan, with the stipulated interest thereon and costs and attorney's fees in case of judicial proceedings. This accommodation on the part of De la Torre was given without compensation or without any valuable consideration whatsoever or promise of gain. In accordance with this agreement, Mercedes de la Torre and Francisco de la Torre subscribed, on May 20, 1929, a promissory note, a mortgage to secure the same being executed upon property belonging to the former and subscribed also by the latter as maker thereof, for the purposes previously stated. Mercedes de la Torre received the full amount of the loan and at the same time or immediately thereafter she delivered it to the creditor Bank in payment of certain obligations which she had with the Bank and which were already past due.

It is immaterial to specify whether Francisco de la Torre subscribed the promissory note and the mortgage as a surety or as principal debtor. It will be sufficient to state, for the purposes of this opinion, that the loan was not made either for his private benefit or for that of the conjugal partnership existing since 1906 between himself and his wife. We should also add that his wife had no knowledge of, nor did

she ratify, the deal made by her husband. It is a fact, however, admitted by De la Torre, that he assumed the obligation to pay the aforesaid debt.

Some time after the carrying out of this deal, The National City Bank of New York took over all the assets and liabilities of the American Colonial Bank of Puerto Rico and in this way the aforesaid credit became the property of the plaintiff Bank.

Upon the failure to pay the loan at maturity, the plaintiff took the proper action for its collection, and to secure the effectiveness of whatever judgment it might obtain and ignoring the mortgaged property, it attached property belonging to the conjugal partnership of De la Torre and his wife, Carmen Fernández Saldaña, notwithstanding the allegation of the defendant that he owned private property which could be attached for that purpose.

Not being in accord with the steps taken by the plaintiff, De la Torre, separately and as an incident of the attachment proceedings, filed a motion in the District Court of San Juan, in which after reciting the aforesaid facts, which were not denied by the plaintiff, he prayed that after hearing the parties the attachment be lifted and declared null and void.

He bases his motion on the fact that as no obligation or debt of the conjugal partnership is involved, no property belonging to said partnership should be attached for the payment of the obligation sued on.

After a hearing the district court denied the motion of De la Torre, from which denial the present appeal was taken.

He alleges five errors in the lower court, as follows:

"*First.*—The District Court erred in its judgment or order of July 14, 1937, by erroneously construing section 1308 of our Civil Code (1930 ed.), as well as the Spanish jurisprudence interpreting said legal precept.

"*Second.*—The District Court erred in the said judgment or order by improperly and erroneously weighing the evidence given, and

because of its failure to make a statement of the facts proven, and by erroneously concluding from the evidence that the appellant, in the contract to which this incident refers, bound himself for a *valuable consideration* and not *gratuitously*, not withstnading the admission by the other party that the obligation was assumed gratuitously.

"'*Third*.—The District Court erred by concluding in the said judgment or order that in the instant case the creditor Bank could attach property of the conjugal partnership, in spite of the fact that the obligation was entered into gratuitously by the appellant.

"*Fourth*.—The District Court erred in the said judgment or order as to the fact proven and admitted by the other party, in disregarding the minutes of the hearing, which was approved by the judge himself, and also in disregarding the facts as proven and admitted by the other party, as appears from the statement of the case, which was also approved by the judge himsef.

"*Fifth*.—And, finally, the District Court erred in holding in the judgment or order appealed from that the property belonging to the conjugal partnership is exempt from attachment only when the husband acts as a surety, but that such property can be attached when he acts as an accommodating party, even though he may not have derived any profit from the loan."

Close upon the assignment of errors the appellant admits (p. 4 of brief) that, although separately set out, such errors constitute but one essential error embodied in the first, to the discussion of which he devotes the first forty-four of the fifty-five pages of his brief. We agree with the appellant that the real issue is contained in the first error assigned and we also think that if such error were without merit it would then be unnecessary to discuss the other four, because in such case an affirmance of the judgment appealed from would lie.

Let us proceed to discuss the same:

"The District Court erred in its judgment or order of july 14, 1937, by erroneously construing section 1308 of our Civil Code (1930 ed.), as well as the Spanish jurisprudence interpreting said legal precept."

As properly sustained by the appellant, the issue is not whether Francisco de la Torre bound himself in favor of

The American Colonial Bank of Puerto Rico as principal debtor or as surety. He admits his liability on the debt, but he contends that, as this was a business deal for the exclusive benefit of somebody else, Mercedes de la Torre, such obligation is not a lien upon the conjugal partnership and therefore that in order to collect the same The National City Bank of New York, creditor, cannot attach property belonging to the conjugal partnership, but should limit itself to attaching private property of De la Torre. This, we think, is the only issue to be determined.

At first sight, if the special nature of the conjugal partnership is not borne in mind, it seems illogical to maintain that as no credit against the community is involved, such credit should be enforced upon community property, since it cannot be stated beforehand whether at the dissolution of the partnership the debtor spouse shall receive sufficient property to repay the community for the amount in question. The conjugal partnership is a *sui generis* partnership distinct from any other partnership. In it the husband is a manager with such wide and absolute powers that it is rightly said that as regards third parties the partnership and the husband constitute a single entity, a distinction existing only in the relations of the spouses *inter se*. The status of the wife is merely a passive one: for better or for worse the husband manages the partnership and pays the debts, whether due by him privately or by the conjugal partnership, the wife being without power to intervene. All she can do is to wait until the dissolution of the partnership by any of the means established by law, and it is then, upon the liquidation, that her right accrues to demand that there should be deducted from her husband's share all the money paid out by him with community funds. In other words, the interest of the wife in the conjugal partnership while it exists is a mere expectancy or hope to receive one moiety of the liquid assets that might exist when the partnership is dis-

solved. Referring to the absolute powers of the husband in the conjugal partnership, Manresa says:

"From this excess of powers in the husband two important considerations arises. One of them is that during the life of the conjugal partnership or until its termination the rights of the spouses are most unequal, the wife being assigned to a passive and secondary position. The other is that *as regards third parties the husband and the partnership are, generally speaking, one and the same thing, two things so merged in one another that they are identified as one insofar as it is possible to consider them merged.*" "*Comentarios al Código Civil*", vol. 9, p. 652. (Italics supplied).

"From a consideration of the above-cited provisions taken as a whole and of others connected therewith, it follows that the wife while married cannot annul the illegal or fraudulent acts committed by the husband so long as the partnership is not dissolved and liquidated. It is them that the husband must refund to the community the value of the things illegally sold in fraud of the wife. These values are added to the profits at the dissolution of the partnership, and the total is distributed in equal shares between husband and wife or their respective heirs, the share allotted to the husband to include what he has contributed or what has been brought to collation by him. If sufficient property is left with which to refund to the wife her private property brought to the marriage and her half share of the property of the conjugal partnership, it will be unnecessary to invalidate the dispositions of property made by the husband, nor will the wife be entitled to apply for the annulment of such acts since she is not prejudiced thereby.

"If, on the other hand, the wife cannot be compensated in that way and is thereby prejudiced, it becomes unnecessary to invalidate the illegal or fraudulent acts. In this latter case there is no legal impediment to the exercise by the wife of an action of nullity, since such action accrues to those principally or secondarily bound by the act or contract, and the wife is bound by the acts of her husband in her capacity as partner in the conjugal partnership. *The wife should be allowed four years in which to exercise the action, to be computed from the dissolution of the marriage, or from the liquidation on any other ground of the conjugal partnership.*" (Id., p. 662.) (Italics supplied.)

Scaevola comments thereon as follows:

"Generally, as a rule, the conjugal partnership, to which the private property of each spouse is contributed, bears and pays all

the obligations of the marriage, including the private debts of the spouses. If at every moment it were necessary to determine, under the provisions of this section, the amount to be paid out of com-munity funds as enumerated in section 1401, or out of the private property of each spouse, a permanent bookkeeper would be required even by couples of humblest means.

"In special cases of extreme mismanagement by the husband, the question arises, as we shall see further on, whether this or that prop-erty, whether these or those joint profits have been used in accord-ance with the provisions of the present section or, on the contrary, in complete disregard of the aim pursued. *The main purpose thereof has reference to the time of the liquidation of the conjugal partner-ship, in order to determine then which obligations, whether unpaid or cancelled, shall constitute a special lien on the private property of each spouse, or on property of the conjugal partnership.*" (Scae-vola, "*Código Civil*", vol. 22, p. 236.) (Italics supplied.)

Professor Baldomero Llerena, of Argentina, when com-menting in his treatise "Concordancias y Comentarios del Código Civil Argentino", 3rd ed., vol. 4, p. 395, section 1280 of said Civil Code, which prescribes that "the husband is bound by the obligations contracted by him either before or after the marriage, without prejudice to the payments on account to be made by him to the conjugal partnership or by the conjugal partnership to the husband," says:

"*The husband is bound.*—Such liability affects his private prop-erty as well as the property of the conjugal partnership. Section 1283 contains similar provisions as regards the wife but its wording is much clearer than the one under consideration.

"*Without prejudice to the payments on account, etc.*—As we have seen in the first part of this section, *the creditors of the husband may demand that they be paid, either from the private property of the husband, or from the property of the conjugal partnership, irre-spective of the origin of the obligation.* But as it is not just that the conjugal partnership should be made to pay obligations con-tracted prior to the marriage, since only such as are contracted during the marriage are liens upon the conjugal partnership (section 1275, par. 3), or those exclusively of the husband and not of the conjugal partnership, *the wife is entitled by law, under this second part, upon the dissolution of the conjugal partnership,* to be credited,

or in other words to have the part which has been taken for the payment of an obligation for which she was not liable, deducted from the share to be allotted to the husband.

*"It should be well understood that this right of the wife can only be enforced upon the dissolution of the conjugal partnership or at least after the creditors are paid, because she cannot bring intervention proceedings by reason of her share in the community property in case said property is executed for the payment of the husband's obligation contracted either before or after the marriage. The whole community property, as well as that of the husband, is subject to the payment of the latter's debts, as is the community property and the wife's private property as provided in section 1283."*

"The wife, and in a proper case the husband, can only set up a claim where separate property of either is attached for the payment of debts of the other or of the conjugal partnership, provided the claimant in the latter case is not the manager of the conjugal partnership (section 1282). (See the two sections following.)" (Italics supplied.)

Troplong, the learned French commentator on the Civil law, describes the rights of the wife in the conjugal partnership, in his treatise *"El Contrato de Matrimonio"*, vol. 2, p. 136, as follows:

"The rights of the wife are dormant during the marriage, as the husband is the one in charge of watching over and conducting the affairs of the conjugal partnership. But this right, which is dormant as long as the husband is at the head of the affairs of the conjugal partnership, becomes active when the marital authority ceases to exist. The wife is like a silent partner, whose rights arise and reveal themselves when the partnership ceases."

According to the French jurisprudence, the wife, during the life of the marital partnership, has only a mere expectancy and therefore has no interest or right in the property of the partnership until it is dissolved. Hence, the common use of the expression that *the community is a partnership which begins at its termination.*

In *Garrozi v. Dastas*, 204 U.S. 64, 81, 82, the then Associate Justice Mr. White, whose authority as an expert on

Civil law is unquestioned, makes a comparative analysis of this institution in France, Spain, Louisiana and Puerto Rico. We recommend that this analysis be read. Mr. Justice White says:

"That there is a substantial similarity between the law of the community under the Napoleon Code and the law on the same subject of Spain, prior to the Civil Code, and as now existing under that and the Code of Puerto Rico, was conceded in the argument of the appellant. Indeed, that argument refers to and rests on some of the provisions of the Napoleon Code. Besides, when it is considered that the ancient Spanish law as formulated in the Code of 1889 or in the Porto Rican Code of 1902, confers no authority upon the wife to obtain a judicial dissolution of the community merely because of the disorder of the husband's affairs, it follows that the power of the husband under the Spanish system is in principle more extensive than it is under the Code Napoleon and the law of the countries which have followed that code. The practical identity of the husband's general authority, as head and master of the community, under the law of Louisiana, the Code Napoleon and the Spanish law was clearly expounded by the Supreme Court of Louisiana, in Guice v. Lawrence, 2 La. Ann. 226, as follows:

" 'The laws of Louisiana have never recognized a title in the wife during marriage, to one-half of the acquets and gains. The rule of the Spanish law on that subject, is laid down by Febrero with his usual precision. The ownership of the wife, says the author, is revocable and fictitious during marriage. As long as the husband lives and the marriage is not dissolved, the wife must not say that she has *gananciales*, nor is she to prevent the husband from using them, under the pretext that the law gives her one-half. But, *soluto matrimonio*, she becomes irrevocably the owner of the undivided half, in the manner provided by law for ordinary joint ownership. The husband is, during marriage, *real y verdadero dueño de todo, y tiene en efecto su dominio irrevocable*. Febrero Adic., volumes 1 and 4, part. 2d., book 1st, chapter 4, par. 1, Nos. 29 and 30; Pothier, Communauté, p. 35, and following; 12 Toullier, chapter 2, Nos. 22 to 31; 14 Duraton, Droit, Franc., p. 281 and following; 10 Dalloz, Jurisp., p. 198 and following.

" 'The provisions of our code on the same subject are the embodiment of those of the Spanish law without any change. The husband is head and master of the community, and has power to

alienate the immovables which compose it by an encumbered title, without the consent or permission of his wife. Civil Code, art. 2373.'

"True it is that in the Porto Rican Code of 1902 there was inserted a provision, previously commented on (section 1328), limiting the power of the husband to dispose of the immovable property of the community without the consent of the wife. But this express limitation as to one particular class of property, by inverse reasoning, is a reaffirmance of the power of the husband as head and master of the community in all other respects..."

Let us apply to the case under consideration the legal principles above expounded. The petitioner De la Torre lays great stress on the fact that the Bank, when accepting him as surety, knew or at least had reasons to believe that the transaction was not one for the benefit of or connected with the conjugal partnership. However, as in regard to third parties dealing with the husband, he and the conjugal partnership are one and the same thing, the plaintiff bank, in accepting De la Torre as surety, relied and had a right to rely on the fact that under the law it could collect the security offered from the private property of the surety as well as from the property of the conjugal partnership. So that unless it is expressly agreed upon that the creditor shall not enforce his credit on community property, in which case the contract is the law as between the parties, his right to collect from the property of the conjugal partnership cannot be denied. And if, as we have seen, the right of the wife regarding community property does not arise until after the dissolution of the partnership, the husband cannot undertake the protection of rights which are not yet in existence. Therefore, we must inevitably conclude that in attaching community property in the present case the plaintiff availed itself of a right granted it by law.

At the risk of saying too much, we desire to explain that the principles here expounded should not be construed in the sense of empowering the husband to alienate or encumber real property of the conjugal partnership without the express consent of the wife. This is a restriction which has been

imposed in this country upon the conjugal partnership as an institution. This restriction in no way affects the conclusion which we have reached, because the question here involved is not the alienation or encumbrance of real property, but the application of such property to the payment of debts and liabilities incurred by the husband.

Finally, we desire to state that the cases cited by the appellant from the State of Washington are not applicable to the present case, since they are based on statutory provisions peculiar to that State but foreign to other jurisdictions where the conjugal partnership exists.

For the foregoing reasons the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.

Mr. Justice Hutchison concurred.